IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
FILED

**JUL 0 5 2000**

Michael N. Milby, Clerk

| | | |
|---|---|---|
| SUSAN BROOKS | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | CIVIL ACTION NO.  C-99-408 |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE | § | |
| TIMOTHY KEITH, and KENNETH GRIFFIN | § | |
| Defendants | § | |

**PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Susan Brooks, plaintiff, files this response to defendants' motion for summary judgment.

**Overview**

The Connally Unit of the Texas Department of Criminal Justice is a very dangerous place to work. From the time the Unit opened in July 1995 through December 1999, there were 678 assaults by inmates against prison staff, which was more than any other prison.

Susan Brooks is a dedicated corrections officer at the Connally Unit. The EEOC found that the Department denied her a promotion to field sergeant, singled her out for verbal and written reprimand, and required her to provide a doctor's excuse because of her pregnancy.

The Department allowed Susan Brooks to guard male inmates, who could injure or kill her. It allowed her to guard male inmates, even when she was pregnant. The Department would not, however, allow her to be a field sergeant and to supervise male corrections officers.

This is offensive.

Page 1

## Title VII Discrimination

To prevail on her Title VII failure to promote claim, Brooks must first establish a prima facie case. This requires that she demonstrate that:

1.     she was not promoted,

2.     she was qualified for the position she sought,

3.     she was within the protected class at the time of the failure to promote, and

4.     either the position she sought was filled by someone outside the protected class or she was otherwise not promoted because of her sex.

*See* Gwynneth Rutherford v. Harris County, No. 98-20623 (5th Cir. Dec.20, 1999) (affirming jury verdict on female deputy's Title VII failure to promote claim).

The burden then shifts to the defendant to proffer a legitimate, nondiscriminatory reason for not promoting her. [*Id.*].   When the defendant meets its burden, the plaintiff must then demonstrate that the defendant's articulated rationale is merely a pretext for discrimination. [*Id.*].

Brooks can meet her burden, raising an inference of unlawful discrimination.

It is undisputed that:

1.     Brooks applied for promotion to field sergeant three times, and interviewed before a promotion board on January 23, 1998, March 31, 1998, and April 23, 1998.[1]

_____

[1]

In each instance, the "board" was one person.  The first board was Assistant Warden Rudy Sanchez.  The second two were Major Erasmo Bravo.

CMJPDF - www.tevia.com

2.    She was qualified for the position she sought.[2]

3.    She was obviously in a protected class at the time of the failure to promote

      (she was a female and was pregnant); and

4.    Men were promoted over her.[3]

In the defendants' motion for summary judgement, the defendants contend:

> While she had experience adequate to meet the minimum qualifications for these positions, [Brooks] performed relatively poorly before the promotion board. In each case, the person selected had equal or greater experience for the position, had adequate knowledge and skill for the position, and performed better before the board. [Defts' Mot. Sum. Judg., pg. 5].

Brooks can show that this articulated rationale is merely a pretext for discrimination.

## Summary Judgement Evidence

**A.    The EEOC investigated Brooks' complaints and found sex discrimination.**

An integral part of the summary judgment record includes the transcript of the pre-trial conference held on December 13, 1999. Warden Keith told this Court at the pre-trial conference that there are no female field sergeants at his facility, and that the two women who applied for the position were both rejected. [Trans. of Pre-Trial Conf., pg. 22].[4]

---

2

        At the pre-trial conference on December 13, 1999, Lt. Kenneth Griffin explained to the Court that all applicants who go before a promotions board are qualified for the position they seek. [Trans. of Pre-Trial Conf. pg. 17].

3

        The three men promoted were Gilbert Mercado, Ray Gloor, and John Jenkins.

4

        Major Bravo admitted in his deposition that, in his 20-years with the Department, he never promoted a female to field sergeant. [Bravo deposition, pg. 61] [EXHIBIT E].

At the pre-trial conference, the Department's attorney, Sheila Wong, explained to the Court that (1) the EEOC investigated Brooks' complaints, and (2) made a finding of sex discrimination. [Transcript of Pre-Trial, pg. 7] [EXHIBIT A].

This Court acknowledged at the pre-trial conference that an EEOC finding of discrimination is "rare." [Trans. of Pre-Trial Conf., pg. 29]. Warden Keith admitted that this was the first finding of discrimination by EEOC that he had faced in his 18-years with the Department. [*Id.* pg. 30]. This admission prompted the Court to comment:

> The Court: ...it's got to be an unusual thing, maybe something that you ought to sit up and take notice.
>
> Mr. Keith: Yes ma'am.
>
> The Court: And review your policies. I mean it does look a little funny if everybody is similarly situated, and all these men and the two women that have applied, and the men get promoted every single time.
>
> [Trans. of Pre-Trial Conf., pgs. 30-31].

At the conclusion of the hearing, the Court wisely admonished Warden Keith to "be sure and listen to your lawyer." [Trans. of Pre-Trial Conf., pg. 40].

Summary judgment is appropriate, when, viewing the evidence in the light most favorable to the non-movant, the record reflects that no genuine issue of any material fact exits, and the moving party is entitled to judgment as a matter of law. Urbano v. Continental Airlines, 138 F.3d 204, 205 (5th Cir. 1998) (pregnancy discrimination case), *citing* Celotex v. Catrett, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 2552-53 (1986); see also Fed. F. Civ. P. 56 (c).

Even if the Court deems the respondent's motion for summary judgment "unopposed," this record does not permit summary judgment on Brooks' Title VII claim.

**B.**     **To conceal the Department's discrimination against Brooks, Warden Keith falsely represented to this Court that the Department could not consider an applicant's disciplinary records.**

All three of the males promoted to field sergeant over Brooks had disciplinary records.

Brooks was an exemplary corrections officer who had no disciplinary record.

At the pre-trial conference, Warden Keith attempted to allay this Court's concerns that males

with disciplinary records were promoted over a female with no disciplinary record by assuring the

Court that an applicant's disciplinary records could not be considered by a promotions board:

| | |
|---|---|
| Warden Keith: | Whenever we do a promotion board, by policy, we're not allowed to review a personnel file nor are we allowed to look at a disciplinary file if an employee has one. |
| The Court: | Why? |
| Warden Keith: | That is the way our policy is written. |
| The Court: | You mean you promote people with disciplinary actions against them over people that have a spotless record? |
| Warden Keith: | If we're not aware of the disciplinary, ma'am, that is possible. |
| The Court: | You mean if the individual on the board doesn't have independent knowledge of a disciplinary then that's what happens? |
| Warden Keith: | Yes, ma'am. |
| The Court: | What is the reason, what is the policy – |
| Warden Keith: | Our policy as far as disciplinary is concerned is to correct people's actions, you know, to get them to do right, and it's not to punish, so taking that into consideration, that way our policy is written we cannot review a personnel file or a disciplinary file prior to holding a promotion board. |
| The Court: | And the public policy reason behind that is so that once they're disciplined, they considered to be – |
| Warden Keith: | That corrective action has been taken. |

| The Court: | So there's no benefit to never having corrective action taken against you at all? |
|---|---|
| Warden Keith: | If they continue to get disciplinaries it eventually leads to dismissal. |
| The Court: | Oh, I understand, but there's not benefit to have no corrective action against you? |
| Warden Keith: | No, ma'am.  Unless a person has individual knowledge. |
| | [Trans. of Pre-Trial, pgs. 10-11]. |

The 5th Circuit recognizes a "subset" of cases in which the "trier of fact may be able to infer discriminatory intent from substantial evidence that the employer's proffered reasons are false." Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 994 (5th Cir. 1996)(en banc).

Warden Keith knew or should have known that his statements to this Court were false. The "policy" in force at the time of the events in question was an "Executive Directive" dated February 1, 1998, signed by Wayne Scott, director of the Department, on the matter of "Selection System Procedures." [EXHIBIT B].

This 11 page document governs the promotions procedures or "policy" of the Department. In Paragraph VII, Subparagraph A of the directive, in a section titled "Selecting the Final Applicant," the directive clearly states:

> **"Prior to the final selection of an inside applicant, the interviewer may contact the losing Human Resources Representative to review the applicant's disciplinary file and previous work history."[5]**

In his deposition, Major Bravo explained that a Human Resources Representative

---

[5]

The term "inside applicant" refers to a current employee of the Department, as opposed to someone from another agency.  The [losing] "Human Resources Representative" can be someone from the unit level or from the regional office. [See pg. 2 of directive, under "Definitions."].

**Page 6**

(usually Kathy Stolting) was present at each promotions board. [Bravo deposition, pgs. 62-63].[6]

Stolting had the applicants' disciplinary files with her at the boards, or had ready access to them.

[*Id.* pg. 63].   Stolting was at the boards to provide Bravo with any information about an applicant

that Bravo might require to make an intelligent promotion decision.   [*Id.*, pgs. 63, 77].  She did not,

however, participate in the decision to promote. [*Id.* pg. 63].

    Obviously, it was important for Bravo to know the track records of the people who were

wanting promotions. [Bravo deposition, pg.  77].  Of course, Bravo was free to ask an applicant

about prior disciplinary problems.  His deposition testimony was clear and direct:

| Mr. Ciccone: | ...if an applicant had any kind of disciplinary record, would you give the applicant an opportunity to explain what happened in a particular incident and why the applicant should nonetheless get the promotion? Where you free to ask those kinds of questions? |
| --- | --- |
| Major Bravo: | By the policy, yes, I was. |
| | [Bravo deposition, pg. 75]. |

    The direct conflict between Warden Keith's statements to this Court and the written policy

of the Department led to this interesting exchange between Major Bravo and counsel:

| Mr. Ciccone: | ...Warden Keith told the United States District Judge in open court on December 13, 1999, I am going to quote you from the transcript, "Whenever we do a promotions board, by policy, we are not allowed to review a personnel file, nor are we allowed to look at a disciplinary file if an employee has one."  Now doesn't that seem to directly contradict the policy that you and I have discussed, which the Executive Director, Wayne Scott, implemented on February 1, 1998? |
| --- | --- |
| Mr. Bravo: | Yes, sir. |

---

6

    Warden Keith told the Court the same at the pre-trial conference. [Trans. of Pre-Trial
Conf., pg. 19].

Page 7

| Mr. Ciccone: | Do you know why Warden Keith would say something like that to a United States District Judge? |
|---|---|
| Mr. Bravo: | No sir. |

[Bravo deposition, pgs. 79-79].

**C.    The fact that applicants with disciplinary records were promoted over Brooks is compelling evidence that the Department's rationale for not promoting her was pretextual.**

Brooks' claim of pretext is most compelling in the case of the second promotion board when Major Bravo promoted Ray Gloor to sergeant over Brooks on March 31, 1998.

On March 25, 1998, only 6-days before the second promotion board on March 31, 1998, one of Brooks' two supervisors, Lt. James Auxier, wrote on her performance evaluation:

> Officer Brooks has been temporarily assigned as an administrative officer in this dept. You have been doing an excellent job with the tracking and I-210''s along with boot log's. You need to take some of the responsibility off yourself. Your fellow officers have become to [sic] dependent on you completing their paperwork. You need to complete orders given to you by your supervisors. Remember, you're not a Sgt. yet. Thanks for your loyalty.[7]

In his deposition, Major Bravo explained that it was important to promote people who were trustworthy and dependable. [Bravo deposition, pgs. 51]. Major Bravo acknowledged that he couldn't very well trust or depend on officers who didn't show up for work on time. [*Id.* pg. 79].

Brooks was never late to work. At the other extreme, Ray Gloor, who was promoted over Brooks on March 31, 1998, had a serious problem waking up and getting to work.

Gloor's disciplinary records show the following:

---

[7]      EXHIBIT C. In other words, Brooks was doing a sergeant's work, but without the title, and without the pay.

On July 23, 1997, the year before his promotion, Gloor was 35-minutes late for work. Sgt. Parma, his ride, wrote in his disciplinary file that he "knocked on Gloor's door and blew the horn, but couldn't wake him up." [Bravo deposition, pg. 80, Exhibits 2-5].

About two months later, on September 25, 1997, Gloor overslept again, and was late a second time. Sgt. Flieller wrote in Gloor's file that "this type of conduct cannot and will not be tolerated and that this was his second chance, and that the next time formal disciplinary will be implemented." [*Id.* pg. 82]

Less than a month later, on October 3, 1997, Gloor was late again. This time, Lt. Griffin (who later recommended Gloor for sergeant) called Gloor and told him to come in to work "immediately." Gloor came in about an hour and a half later. [*Id.* pg. 83].

After this last incident, and not long before promoting him to sergeant, *Major Bravo* put Gloor on probation for 3-months, from October 10, 1998 until January 8, 1998. [*Id.* pg. 83, Exhibit 4].

Despite this miserable record, Gloor was somehow "dependable" and "trustworthy" and more qualified for promotion than Brooks.

In his deposition, Major Bravo also explained that it was important for corrections officers to be able to get along with each other. [Bravo deposition, pg. 85]. He explained that officers have to be able to control themselves because they can't very well control the inmates if they can't control themselves. [*Id.* pg. 85].

While he was on probation, on December 12, 1998, Gloor got into a fight with another corrections officer in front of a group of inmates. This dangerous incident caused *Major Bravo*

to recommend formal disciplinary for Gloor.[8]

Only three months later, on March 31, 1998, Bravo interviewed Gloor, and promoted him to sergeant over Brooks (1) who was already doing a sergeant's work, (2) who was never late, and (3) who never got into fights with other corrections officers.

In promoting Gloor to sergeant, Major Bravo noted on the "interview documentation form" that "Officer Gloor did an excellent job during the interview and conducted himself in a very professional manner during the interview..." [Bravo deposition, pg. 88, Exhibit 6].

In Brook's interview documentation form, Bravo commented that Brooks' answers to his questions were "clear, direct, concise & very professional." [EXHIBIT D]. This conflicts with the defendants' assertion that Brooks "performed relatively poorly before the promotion board." Moreover, Major Bravo's admissions at his deposition make the defendants' contention that Gloor "performed better before the board," almost comic:

Mr. Ciccone:    I would like you to look at your comments with regard to the promotion. You commented that when you interviewed Mr. Gloor and promoted him that he had "conducted himself in a very professional manner during the interview."

Mr. Bravo:    Yes sir.

Mr. Ciccone:    Did he conduct himself in a "very professional manner" when he had to be written up three times for not coming to work on time?

Mr. Bravo:    No sir.

Mr. Ciccone:    And did he conduct himself in a very professional manner when he got into a fight with another corrections officer in front of a group

---

[8]

The fact that Bravo himself *twice* disciplined Gloor prior to promoting him to sergeant shows that Bravo had "independent knowledge" of Gloor's poor disciplinary record.

of inmates?

Mr. Bravo:         No sir.

Mr. Ciccone:     So despite Mr. Gloor having this kind of miserable track record, (which apparently you knew about or should have known about) you promoted him to sergeant over Mr. Brooks, did you not.

Mr. Bravo:         Yes sir.

[Bravo Deposition, pg. 88].

**D.    The sergeants were chosen before the promotion boards interviews.**

At the pre-trial conference, Lt. Griffin told the Court that he made no recommendation to the board about who to promote. [Trans. of Pre-Trial Conference, pg. 13].

EEOC, however, found that "[t]estimonial evidence indicates that the supervisory personnel had identified the three selectees as their preferred choices prior to the selections." [*Id.*]

At trial, Ray Gloor, who no longer works for the Department, will testify that Lt. Griffin brought Gloor to Major Bravo *before* the promotion board, and told Bravo that he wanted Gloor to be his sergeant.[9]

At his deposition, Major Bravo agreed that, even though she was pregnant, Brooks was capable of guarding inmates. [Bravo deposition, pg. 89]. He could think of no reason why being pregnant would make her incapable of supervising other corrections officers. [*Id.*].

EEOC further found that '[t]estimonial evidence indicates that one of the these supervisors,

---

[9]

     Gloor spoke to counsel's assistant twice about his experiences with the Department. Gloor will testify at trial under subpoena. He confided that he is unwilling to provide an affidavit because he reasonably fears that the Department will retaliate against his girlfriend, who works for the Department.

Page 11

a Respondent lieutenant, told Charging Party that she would not get selected for Sergeant as long as she was pregnant..." [EXHIBIT A].

The "Respondent Lieutenant" was Griffin, who told Brooks that she couldn't be a sergeant because she was "bred". [Trans. of Pre-Trial Conf., pg. 21].[10] Despite his deplorable track record, Griffin recommended Gloor to Bravo for promotion over Brooks. And Bravo, who never promoted a female to field sergeant in his 20-years with the Department, obliged Griffin. This is Title VII sex discrimination.

**WHEREFORE**, Susan Brooks prays that he Court deny defendants' motion for summary judgment.

Respectfully submitted,

Edward L. Ciccone
SBN: 04250550
Fed. I.D. No. 4641
P.O. Box 8791
Corpus Christi, Texas 78468
Office: (512) 887-6296
Facsimile: (512) 887-1847

ATTORNEY FOR THE PLAINTIFF

---

10

Griffin denies saying this. [*Id.* at 21]. The conflict in testimony must be resolved at trial.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing pleading was delivered to the below person via regular first class mail on this _5_ day of _July_, 2000.

Adreain L. Young
Assistant Attorney General
P. O. Box 12548, Capitol Station
Austin, TX 78711
Attorney For Defendants

Edward L. Ciccone

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| SUSAN BROOKS | § | |
|     Plaintiff | § | |
| | § | |
| VS. | § | CIVIL ACTION NO.  C-99-408 |
| TEXAS DEPARTMENT OF CRIMINAL JUSTICE | § | |
| TIMOTHY KEITH, and KENNETH GRIFFIN | § | |
|     Defendants | § | |

## ORDER

Came on to be heard defendants' motion for summary judgment, which the Court

**DENIES**.

_____

United States District Judge

# EXHIBITS
# NOT
# IMAGED

CVisPDF – www.fevisio.com